UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCB DIVERSIFIED MUNICIPAL PORTFOLIO, ET AL. | CIVIL ACTION |
| VERSUS | NO.  09-7351 |
| CREWS & ASSOCIATES, ET AL. | SECTION "N" (4) |

## ORDER AND REASONS

Before the Court is the " **Motion for Summary Judgment**" (Rec. Doc. 182), filed by

Defendant Greystone Valuation Services ("Greystone").  This motion is opposed by Plaintiffs,

SCB Diversified Municipal Portfolio, Short Duration New York Municipal Portfolio and Short

Duration California Municipal Portfolio ("Plaintiffs").  (*See* Rec. Doc. 203).  After considering

the memoranda filed by the parties including Greystone's Reply (Rec. Doc. 222), the Court rules

as set forth herein.

## I.      BACKGROUND

On November 1, 2006, defendant Coves of the Highland Community Development

District (the "District) and MGD Partners ("MGD") entered into a Development agreement to

begin development of The Coves of the Highland (the "Project"), a planned residential

community located in Tangipahoa Parish, Louisiana.  In March of 2006, MGD purchased 324

acres of real property (the "Property") at the site of the Project.  MGD employed the services of

Greystone to prepare a "Marketability Study" for the Project.  The effective date of the

Marketability Study was September 4, 2006.  In an effort to fund certain infrastructure

improvements for the Project, the District issued $7,695,000 in bonds titled "Coves of the

Highland Community Development District, Parish of Tangipahoa, State of Louisiana Special

Assessment Bonds, Series 2006" (the "Bonds").  Defendant Crews and Associates was the

underwriter of the bonds and purchased the Bonds from the District.  The Bonds were thereafter

offered for re-purchase to Plaintiffs in November of 2006 through a "Preliminary Limited

Offering Memorandum" ("PLOM"), and a final "Limited Offering Memorandum" ("LOM")

dated November 8, 2006.  The PLOM and LOM were drafted by Crews, the District, and

defendant Breazeale, Sachse & Wilson, L.L.P. ("Breazeale").  Greystone's Marketability Study

was attached as an appendix to both the PLOM and the LOM.  Plaintiffs thereafter purchased the

entire face amount of the Bonds in connection with the Project.  The formal closing with

Plaintiffs occurred on November 16, 2006.

On March 9, 2009 and after the development of the Project had commenced, the U.S.

Army Corps of Engineers ("Corps") published a Public Notice (the "Notice") in the local

Hammond newspaper entitled "Request for Information about the Former Hammond Bombing

and Gunnery Range" ("HBGR").  In the Notice, the Corps announced that it had completed its

Site Inspection at the HBGR and that a Draft Site Inspection Report dated December 12, 2008

had been placed in the Hammond Public Library for public reference.  According to Plaintiffs,

this Draft Site Inspection Report dated December 12, 2008 was the earliest public disclosure of

this information.

The Notice revealed, among other things, that the Corps used portions of the property form 1942 until September 1945 to provide gunnery, rocket and bombing practice for pilots.  The Corps' inspection report noted the potential for unexploded ordnance ("UXO") and munitions and explosives of concern ("MEC") on the HBGR.

On April 23, 2009, the Tangipahoa Parish Engineer notified MGD that no further building permits or approvals would be issued by the Parish until the risk of UXO and MEC contamination had been fully investigated and remediated.  As such, development of the Project has ceased, no permits or approvals are being issued, and lots on the Property are unable to be sold.

The District defaulted on the Bonds and Plaintiffs filed the instant suit on November 16, 2009.  Plaintiffs seek to recover damages against Greystone for negligent misrepresentation for (1) failing to conduct an environmental investigation regarding the Project (as defined below) to determine potential contamination; (2) failing to obtain a Phase 1 Environmental Site Assessment; and (3) failing to obtain a title examination or title abstract to determine any historical issues regarding environmental contamination.

## II.      ARGUMENTS OF THE PARTIES

Greystone asserts that Plaintiffs' negligent misrepresentation claim must fail because Plaintiffs cannot meet their burden of showing (1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation or omission. (Rec. Doc. 182-1, p. 5).  Greystone argues that obtaining a Phase I Environmental Site Assessment was outside of the scope of the duty that Greystone assumed when it contracted with MGD to prepare the marketability study.  (Rec. Doc. 182-1, pp. 6-7).  Greystone further claims

that any duty it may have had to supply correct information was limited by provisions in the

marketability study which explained the scope of Greystone's work and the underlying

assumptions with which it operated.  (Rec. Doc. 182-1, pp. 7-8). In addition, Greystone states

that Plaintiffs cannot show that they actually relied on Greystone's study for environmental

contamination matter, and that any such reliance would not have been justified.   (Rec. Doc. 182-

1, pp. 12-15).  Finally, Greystone asserts that Plaintiffs' claim is prescribed.  (Rec. Doc. 182-1,

pp. 15-19).

On the other hand, Plaintiffs argue that (1) Greystone had a duty to discover and disclose

the lack of a Phase I Environmental Site Assessment; (2) Greystone breached that duty; and (3)

Plaintiffs relied on statements by Greystone when they decided to purchase the Bonds.  (Rec.

Doc. 203, pp. 9-10, 30-31).  Plaintiffs further assert that their claims are not time-barred because

the Plaintiffs were not damaged when they first purchased the bonds on November 16, 2006, but

rather that their damages materialized in April 2009 when Tangipahoa Parish refused to issue

permits for the Project.  (Rec. Doc. 203, pp. 16-17).

III.    DISCUSSION

        A.      Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

materiality of facts is determined by the substantive law's identification of which facts are critical

and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*citations omitted*). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (*emphasis omitted*) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### B.      Analysis

In order to establish a prima facie claim for negligent misrepresentation, Plaintiffs must demonstrate that (1) Greystone had a legal duty to supply correct information to Plaintiffs; (2) Greystone breached this duty; and (3) Plaintiffs were damaged as a result of justifiable reliance on Greystone's misrepresentations. *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) (*citing Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994); *In re Ward*, 894 F.2d 771,776 (5th Cir. 1990); *Pastor v. Lafayette Bldg. Ass'n*, 567 So.2d 793, 796 (La. App. 3 Cir. 1990); *Cypress Oilfield Contractors, Inc. V. McGoldrick Oil Co.*, 525

So.2d 1157, 1162 (La. App. 3 Cir. 1988)).  The existence of a legal duty is a question of law.  *Id.*

(*citing Bunge Corp. V. GATX Corp.*, 557 So.2d 1376, 1384 (La. 1990)).

Here, Plaintiffs have failed to clearly identify the source of law from which they claim

Greystone's duty to obtain an environmental assessment or to disclose the absence of one arises.[1]

However, even assuming, arguendo, that Greystone had a legal duty, the Court finds that

Greystone did not breach that duty.  Importantly, there is no mention of any environmental

assessment in Greystone's report.  (*See* Exhibit A to Rec. Doc. 182).   Further, the Marketability

Study prepared by Greystone contained several "Underlying Assumptions and Conditions" that

make clear that Greystone did not guarantee the Project to be free from environmental defect in

---

[1]For a negligent misrepresentation claim, a defendant's duty to disclose may arise from several sources.  The duty may arise from the nature of defendant's relationship with plaintiff; when a special relationship exists between plaintiff and defendant, such as a fiduciary or confidential relationship, then there will be a duty to disclose. *Id.* (*citing Wilson v. Mobile Oil Corp.*, 940 F.Supp. 944, 955 (E.D.La. 1996) (*citing Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992) and *First Downtown Dev. v. Cimochowski*, 613 So.2d 671, 677 (La. App. 2 Cir. 1993)); *Bunge Corp. V. GATX Corp.*, 557 So.2d at 1383-84 (La. 1990)).  However, even in the absence of a fiduciary relationship, courts impose a duty to provide accurate information on defendants who voluntarily supply information to a plaintiff.  *Payne v. O'Quinn*, 565 So.2d 1049, 1054 (La. App. 3 Cir. 1990); *Pastor v. Lafayette Bldg. Ass'n*, 567 So.2d at 796.  While Greystone may have had a duty under this precedent, the Court does not make any such finding as it is not necessary for the resolution of this motion.
    Further, Plaintiffs cite Rule 10b-5, promulgated by the SEC under Section 10(b) of the Securities Exchange Act of 1934 provides that "[i]t shall be unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.  However, Plaintiffs have not asserted securities law claims against Greystone.  While Plaintiffs do not make the argument explicit, the Court has inferred that the Plaintiffs may possibly be arguing that the obligation imposed under Rule 10b-5 creates a duty for negligent misrepresentation.  Given the limitations placed on the enforcement of federal securities laws such as Section 10(b) of the Securities Exchange Act, the Court is unsure of the viability of any such claim by Plaintiffs.  However, the Court declines to rule on this issue as its determination is not essential to the resolution of this motion.

writing its report.[2]  Any duty of

---

[2]The relevant portions of the Marketability Study state:

"Underlying Assumptions and Conditions: The analysis and report are made subject to the following conditions and assumptions: . . .

2. No responsibility is assumed for matters legal in nature.  Title is assumed to be good and marketable and in fee simple unless discussed otherwise in the report.  The property is considered to be free and clear of existing liens, assessments, and encumbrances, except as noted.

 . . .

6. Unless otherwise noted herein, it is assumed that there are no encroachments or violations of any zoning or other regulations affecting the subject property . . . .

. . .

10. Unless subsoil opinions based upon engineering core borings were furnished, it is assumed there are no subsoil defects present that would impair development of the land to its maximum permitted use, or would render it more or less valuable.

. . .

14.  The analysis is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report; further that all applicable zoning, building and use regulations and restrictions of all types have been complied with unless otherwise stated in the report; further, it is assumed that all required licenses, consents, permits, or other legislative or administrative authority, local, state, federal and/or private entity or organization have been or can be obtained or renewed for any use considered in the value estimate.

. . .

16. Although the analyst has made, insofar as is practical, every effort to verify as factual and true all data set forth in this report, no

8

disclosure that Greystone may have had was certainly met by the inclusion of these extensive

assumptions.

Further, Plaintiffs argue that Greystone breached a duty by failing to meet the Uniform

Standards of Professional Appraisal Practice in preparing its report.  (Rec. Doc. 203, p. 31).

However, Plaintiffs cite no case or statute, nor can the Court locate one, that imposes a legal duty

upon Greystone to meet these standards such that a failure to meet them would constitute a

negligent misrepresentation.  While it is hypothetically possible that the failure to conform to

these standards would constitute a breach of contract[3], Plaintiffs would not be the proper parties

---

> responsibility is assumed for the accuracy of any information
> furnished the analysts either by the client or others.  If for any
> reason, future investigations should prove any data to be in
> substantial variance with that presented in this report, the analyst
> reserves the right to alter or change any or all conclusions and/or
> estimates of value.
>
> . . .
>
> 19. This report has been prepared for the exclusive benefit of MGD
> Partners, LLC. It may not be used or relied upon by any other party
> unless otherwise stated.  Any party who uses or relies upon any
> information in this report, without the preparer's written consent,
> does so at their own risk.
>
> 20.  ACCEPTANCE OF, AND/OR USE OF, THIS REPORT
> CONSTITUTES ACCEPTANCE OF THE ABOVE
> CONDITIONS.

(Exhibit A to Rec. Doc. 182, pp. 4-5).

---

[3]The Court has not determined that Greystone failed to conform to these standards or that the failure to conform to these standards would constitute a breach of contract because that issue is not before the Court.

to assert that claim as no contract existed between Plaintiffs and Greystone.

In addition, Plaintiffs cannot show justifiable reliance on the existence of a Phase I Environmental Site Assessment based on Greystone's study.  Any such reliance would certainly have been unjustified based on the above cited assumptions and conditions.  However, the deposition of William Oliver, Plaintiffs' agent who worked on this transaction, demonstrates that Plaintiffs did not rely on Greystone's study for information regarding a Phase I Environmental Site Assessment.   It is undisputed that Mr. Oliver reviewed the PLOM and LOM in order to make an investment decision on Plaintiffs' behalf.  (*See* Rec. Doc. 203, at pp. 3-4).  Mr. Oliver testified at his deposition that he understood that any information regarding a Phase I Environmental Site Assessment in the PLOM was supplied by Bodin & Webb, the Project's engineers, and not from any other source.[4]   As such, Plaintiffs have not shown any reliance on the Greystone study regarding the existence of a Phase I Environmental Site Assessment.

---

[4]The relevant deposition testimony reads as follows:

> Q.  So you knew that the information provided under these captions [including "Phase I Environmental Site Assessment"] were coming from the developer or from Bodin & Webb, the engineer?
>
> A.  Yes.
>
> Q.  And in light of reading that statement and your knowledge that information was coming from the developer and Bodin & Webb, you didn't expect the information to come from any other source, correct?
>
> . . .
>
> A.  I guess not.

(Exhibit F to Rec. Doc. 182, p. 149).

**IV.     CONCLUSION**

Considering the foregoing, **IT IS ORDERED** that Greystone's **"Motion for Summary Judgment" (Rec. Doc. 182)** is **GRANTED**.

New Orleans, Louisiana, this 28th day of <u>November</u> 2011.

_____

**KURT D. ENGELHARDT**

**United States District Judge**